JACK T. BLAND, E. R. BROWN, F. R. RAY, HAYWOOD BROWN AND C. C. JORDAN, JR., ON BEHALF OF THEMSELVES AND OTHER MEMBERS OF THE FIRE DEPARTMENT OF THE CITY OF WILMINGTON, AND WILMINGTON FIREFIGHTERS' ASS'N, LOCAL NO. 1284 v. CITY OF WILMINGTON, NORTH CAROLINA, MAYOR L. M. CROMARTIE, COUNCILMEN JOHN SYMMES, W. ALEX FON-VIELLE, JR., HERBERT BRAND AND B. D. SCHWARTZ

No. 63

(Filed 12 May 1971)

1. **Declaratory Judgment Act § 1; Municipal Corporations § 9— right of municipal firemen to live outside city — justiciable controversy**

Controversy justiciable under Declaratory Judgment Act was presented where plaintiff municipal firemen alleged that they have a statutory right to live outside the city limits and that defendant city has denied them permission to do so and has declared that it would terminate the employment of any fireman who moved outside the city, and the city alleged that the statute on which the firemen rely has been repealed by enactment of another statute, the firemen not being required to risk their employment by moving outside the city in order to have the applicable statutes construed and their rights declared.

2. **Appeal and Error § 3— constitutional questions — appellate review**

The Supreme Court will not decide a constitutional question which was not raised or considered in the court below.

3. **Statutes § 11— conflicting statutes**

If there is a conflict between two statutes, the last statute enacted will prevail to the extent of the conflict.

4. **Evidence § 1— private or local act — judicial notice**

While the courts, as a general rule, will not take judicial notice of a private or local act unless it is pled by reference to its title or the day of its ratification, even though the act is published among the public laws, this rule should not prevail when a statute which effectually settles the controversy has been formally brought to the attention of the court and all the parties. G.S. 1A-1, Rule 9(h).

5. **Statutes § 11— local statute — exception to subsequent general law**

A local statute enacted for a particular municipality is intended to be exceptional and for the benefit of such municipality and is not repealed by the enactment of a subsequent general law.

6. **Municipal Corporations § 9— requirement that municipal firemen live in city**

Firemen of the City of Wilmington are required to live within the city by provision of the city charter requiring that the city's firemen possess the right of suffrage.

---

**Bland v. City of Wilmington**

---

ON *certiorari* to review the decision of the Court of Appeals, reported in 10 N.C. App. 163, 178 S.E. 2d 25, which affirmed the judgment entered by *Cowper, J.*, at the 20 April 1970 Session of NEW HANOVER.

Proceeding under the Declaratory Judgment Act, G.S. 1-253 *et seq.* Plaintiffs instituted this action against the City of Wilmington on behalf of themselves and other members of the Fire Department of the City of Wilmington and the Wilmington Fire Fighters' Association, Local No. 1284. The complaint alleges: Plaintiffs are residents of Wilmington and are employed by the City as firemen. Plaintiffs have requested permission to move their residences to locations in New Hanover County, outside the city limits of Wilmington. Defendants have consistently refused such permission and have informed plaintiffs that the employment of any fireman who moves outside the city limits will be terminated. Plaintiffs believe that G.S. 160-115.1 gives a city fireman the right to reside outside the municipality by which he is employed. A genuine controversy exists between plaintiffs and defendants, and plaintiffs are entitled to a declaration of their rights under the applicable statutes.

Answering, defendants admit they have refused the request of certain firemen that they be allowed to move outside the city limits. They allege (1) that G.S. 160-115.1 was repealed by G.S. 160-25; (2) that there is no justiciable controversy now existing between plaintiffs and the City; and (3) that the action should be dismissed because plaintiffs have failed to state a claim upon which relief can be granted.

Judge Cowper heard the case without a jury. He concluded that G.S. 160-115.1 and G.S. 160-25 are in conflict and, "because of the two conflicting statutes, the court is of the opinion and finds as a fact that the above action should be dismissed." From his judgment dismissing the action, plaintiffs appealed to the Court of Appeals, which affirmed the dismissal upon the premise that the allegations of the complaint "do not present a justiciable controversy." Upon plaintiffs' petition we allowed *certiorari*.

*James L. Nelson for plaintiff appellants.*

*Yow and Yow for defendant appellees.*

*Attorney General Morgan; Deputy Attorney General Moody, amicus curiae.*

SHARP, Justice.

Plaintiffs' assignments of error raise two questions: (1) Have plaintiffs stated a controversy justiciable under the Declaratory Judgment Act? (2) If so, may the City of Wilmington require its firemen to reside within the city limits?

The Declaratory Judgment Act permits any person affected by a statute or municipal ordinance to obtain a declaration of his rights thereunder. G.S. 1-254. Courts of record within their respective jurisdictions are expressly empowered to declare such rights even though no further relief is or could be claimed, and no proceeding is "open to objection on the ground that a declaratory judgment or decree is prayed for." G.S. 1-253. The purpose of the Declaratory Judgment Act "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be liberally construed and administered." G.S. 1-264.

Claiming the right under G.S. 160-115.1, city firemen of Wilmington requested permission to live outside the corporate limits. The City, contending that G.S. 160-25 repealed G.S. 160-115.1, denied permission and declared it would terminate the employment of any fireman who moved his residence outside the corporate limits. The trial judge declined to adjudicate plaintiffs' rights because he found the two statutes to be in conflict; the Court of Appeals declined upon the premise that no justiciable controversy existed.

[1] The rights of these parties are affected by G.S. 160-115.1, G.S. 160-25, and other statutes. To the end that they may be relieved "from uncertainty and insecurity," plaintiffs are entitled to have the applicable statutes construed and their rights declared. A real controversy exists between the parties, and a fireman is not required to risk his employment by moving outside the City in order to make a test case. Such a requirement would thwart the remedial purpose of the Declaratory Judgment Act. *Little v. Trust Co.*, 252 N.C. 229, 113 S.E. 2d 689. The facts in *City of Raleigh v. R. R. Co.*, 275 N.C. 454, 168 S.E. 2d 389, and *Angell v. Raleigh*, 267 N.C. 387, 148 S.E. 2d 233, the decisions upon which defendant relies, are distinguishable from this case. The first case involved the construction of a *proposed* ordinance; in the second, certain citizens, not parties to

any controversy, sought an opinion as to the validity of an ordinance for their "academic enlightenment."

We hold that the pleadings in this case present an actual controversy justiciable under the Declaratory Judgment Act.

With reference to question (2), the parties' contentions revolve around the two statutes mentioned in the pleadings. G.S. 160-115.1 provides: "The governing bodies of every incorporated city and town are authorized to employ members of the fire department and to prescribe their duties. *Persons employed as members of the fire department may reside outside the corporate limits of the municipality."* (Emphasis added.)

The foregoing section was enacted by the General Assembly on 27 February 1969. At the same session, on 27 March 1969, it rewrote G.S. 160-25 to read as follows: "No person shall hold any elective office of any city or town unless he shall be a qualified voter therein. *Residence within a city or town shall not be a qualification for or prerequisite to appointment to any nonelective office of any city or town, unless the governing body thereof shall by ordinance so require."* (Emphasis added.)

With reference to the foregoing statutes the City's contentions seem to be these: (1) G.S. 160-115.1 is unconstitutional in that "public officials must reside in the jurisdiction in which they serve." (2) G.S. 160-25 "repeals G.S. 160-115.1." (3) A city fireman is a nonelective public officer, and, under G.S. 160-25, firemen may be required to live within the city limits. Plaintiffs contend: (1) Firemen are specifically authorized by G.S. 160-115.1 to reside outside the city limits of the municipality which employs them. (2) Firemen are not public officials; thus there is no conflict between G.S. 160-115.1 and G.S. 160-25. (3) Even if firemen are held to be public officials the City has pled no ordinance enacted under G.S. 160-25 requiring its firemen to reside within the corporate limits and, *on this record,* they are entitled to live outside the City.

[2] Whether the General Assembly can constitutionally authorize cities to permit their firemen to reside outside the corporate limits is a question which was not raised in the court below, and it may not be raised for the first time on appeal. *Lane v. Insurance Co.,* 258 N.C. 318, 128 S.E. 2d 398. "It is a well established rule of this Court that it will not decide a constitutional question which was not raised or considered in the court below."

*Johnson v. Highway Comm.*, 259 N.C. 371, 373, 130 S.E. 2d 544, 546. Thus the constitutionality of G.S. 160-115.1 is not before us.

[3] If there is any conflict between G.S. 160-115.1 and G.S. 160-25, the latter will prevail to the extent of the conflict since it was the last enactment. *Cab Co. v. Charlotte*, 234 N.C. 572, 68 S.E. 2d 433; *Guilford County v. Estates Administration, Inc.*, 212 N.C. 653, 194 S.E. 295; *Commissioners v. Commissioners*, 186 N.C. 202, 119 S.E. 206. Obviously, there is no conflict between these two statutes unless firemen of the City of Wilmington are held to be nonelective public officials and unless G.S. 160-115.1 is construed to give firemen the absolute right to reside outside the city limits.

In support of its contention that a fireman is a public officer defendant calls attention to G.S. 20-114.1(b) which provides that "[i]n addition to other law enforcement officers, uniformed regular and volunteer firemen may direct traffic to enforce traffic laws and ordinances at the scene of fires in connection with their duties as firemen. . . . Except as herein provided, firemen . . . shall not be considered law enforcement officers." *(See also* G.S. 69-23.)

The Attorney General, in his brief as *amicus curiae,* also calls attention to § 28.3 of the Charter of the City of Wilmington which provides that persons exercising the duties of firemen shall have power and authority "to make arrests during fires for interference with or obstruction of their operations." (N. C. Sess. Laws, Ch. 1046, Art. 28, § 28.3, 1963).

Relying upon *State v. Hord,* 264 N.C. 149, 141 S.E. 2d 241—a case holding a policeman to be a public officer—, defendant contends that in authorizing firemen to enforce ordinances, to direct traffic at the scene of the fire, and to arrest those guilty of interfering with their operations at a fire, the legislature delegated a portion of its sovereign power to firemen and thereby made them public officers.

"A fireman may be either an officer or employee as the legislature may determine; in ascertaining whether he is one or the other, consideration should be given to such factors as the delegation of a portion of the sovereign function of government, the requirement of an official oath, the conferring of powers by law and not by contract, and the fixing of the dura-

tion of a term of office." 62 C. J. S. *Municipal Corporations* § 599 (1949). *See also Nissen v. Winston-Salem,* 206 N.C. 888, 175 S.E. 310; *Duncan v. Board of Fire & Police Com'rs, etc.,* 131 N. J. L. 443, 37 A. 2d 85; *Johnson v. Pease,* 126 Wash. 163, 217 P. 1005; *Driscoll v. City of Medford,* 328 Mass. 360, 103 N.E. 2d 712; 6 N. C. Index 2d *Public Officers* § 1 (1968); 42 Am. Jur. *Public Officers* §§ 4, 8, 13, 15; 16 McQuillin, *Municipal Corporations* § 45.11 (1963). Annot., 140 A.L.R. 1076.

Although firemen undoubtedly have certain police powers during fires, it is not necessary for us to decide whether firemen are public officers in order to answer question (2). Even if they were held to be nonelective officers, under G.S. 160-25 the governing body of a city could, by ordinance, immediately require them to reside within the city limits. Presumably Wilmington now has no such ordinance since none was pleaded. Neither did the City plead any provisions of its charter.

[4] As a general rule, a court will not take judicial notice of a private or local act unless it is pled by reference to its title or the day of its ratification; and this is true even though the act is published among the public laws. G.S. 1A-1, Rule 9(h); *Winborne, Utilities Commissioner v. Mackey,* 206 N.C. 554, 174 S.E. 577; *Bolick v. Charlotte,* 191 N.C. 677, 132 S.E. 660; *Durham v. R. R.,* 108 N.C. 399, 12 S.E. 1040; Stansbury, North Carolina Evidence § 12 (2d ed. 1963). *See McIntyre v. Clarkson,* 254 N.C. 510, 119 S.E. 2d 888. However, as Hoke, Justice (later Chief Justice), pointed out in *Reid v. R. R.,* 162 N.C. 355, 78 S.E. 306, the foregoing rule is one of pleading, designed and intended primarily to prevent a litigant from being taken by surprise. It should never be allowed to prevail when a statute which effectually settles the controversy has been formally brought to the attention of the court and all parties. "It has been repeatedly held here that the court will not entertain or proceed with a case merely to determine abstract propositions. . . ." *Id.* at 359, 78 S.E. at 308.

The Attorney General has called our attention to the provisions of the City Charter of Wilmington which dictate the qualifications of its firemen. The City Charter of Wilmington was "revised, consolidated and rewritten" by Ch. 1046 of the Session Laws of 1963. Sections 11.3 and 11.7 of Article 11 relating to Civil Service were amended by Ch. 253 of the Session Laws of 1967. Section 11.3 gives the Civil Service Commission,

created by § 11.1, "full charge of passing upon the qualifications and certifying the eligibility of all persons to be appointed as police officers or firemen of such municipality." Section 11.7 provides that "[a]ll applicants for positions as police officers or firemen of the City of Wilmington shall be subject to a written examination which shall be competitive and free to all persons *possessing the right of suffrage*," who met the other requirements as to age, health, and character. (Italics ours.)

[6]  Since a city charter governs only the municipality it creates, the requirement in Wilmington's charter that its firemen possess the right of suffrage can only mean that they possess the right to vote in that city's elections. Residence within a city or town is a prerequisite to the right to vote in a municipal election. G.S. 160-45; N. C. Sess. Laws, Ch. 1046, Art. IV, § 4.3 (1963).

[5]  Neither G.S. 160-115.1 nor G.S. 160-25 repealed the provisions of Wilmington's city charter prescribing the qualification of its firemen. "The rule as to the effect of a subsequent general statute on a local statute is stated in *Felmet v. Commissioners,* 186 N.C. 251, 119 S.E. 353: 'A local statute enacted for a particular municipality is intended to be exceptional and for the benefit of such municipality, and is not repealed by an enactment of a subsequent general law.' " *Charlotte v. Kavanaugh,* 221 N.C. 259, 263, 20 S.E. 2d 97, 99. *Accord, Goldsboro v. R. R.,* 241 N.C. 216, 85 S.E. 2d 125; *Power Co. v. Bowles,* 229 N.C. 143, 48 S.E. 2d 287; *Rogers v. Davis,* 212 N.C. 35, 192 S.E. 872; *Bramham v. Durham,* 171 N.C. 196, 88 S.E. 347. *See also Hobbs v. Moore County,* 267 N.C. 665, 149 S.E. 2d 1.

[6]  The answer to question (2) is that firemen of the City of Wilmington are required by its charter to reside within the city.

We are constrained to believe that if the provisions of the city charter had been pleaded and brought to the attention of the trial judge he would have declared the rights of the parties. We also note that the Court of Appeals did not have the benefit of the brief filed in this Court by the *amicus curiae.*

The decision of the Court of Appeals is reversed and the case returned to that court with directions to remand it to the Superior Court for entry of judgment in accordance with this opinion.

Reversed.